**Robert D. HARMON, Plaintiff–Appellant,**

v.

**CSX TRANSPORTATION, INC., Defendant–Appellee.**

No. 02–6226.

United States Court of Appeals, Sixth Circuit.

June 7, 2004.

A.V. Conway, II, Conway & Conway, Hartford, KY, Larry W. Lockwood, Jr., Hajek & Shapiro, Virginia Beach, VA, for Plaintiff–Appellant.

Edward H. Stopher, Raymond G. Smith, David T. Klapheke, Boehl, Stopher & Graves, Louisville, KY, for Defendant–Appellee.

Before: SUHRHEINRICH, GIBBONS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Robert Harmon sued his former employer, CSX Transportation, under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, claiming that the company negligently failed to warn employees about the dangers of using certain cleaning solvents and negligently failed to ensure employees took adequate safety precautions in using them. After a three-week trial, the jury returned a verdict in CSX's favor. In challenging this judgment against him, Harmon claims that several of the district court's evidentiary rulings amounted to reversible error. Disagreeing, we affirm.

I.

Robert Harmon worked for CSX Transportation and its predecessor railroad companies for 24 years. In 1974, when he joined the company, he worked as a carman in Corbin, Kentucky, where he cleaned railcar parts and cabooses, among other duties. In handling this job, he and other employees used a cleaning solvent known as "Dowclene," which is composed of two chemicals—trichloroethane and perchlororethylene.

In 1992, CSX promoted Harmon to a safety-director position, ending his carman duties. Six years later, he retired from

the safety-director position after he began suffering memory problems and other illnesses.

In 1999, Harmon filed a claim under the FELA against CSX in the United States District Court for the Eastern District of Kentucky. While he worked as a carman, he alleged, CSX negligently exposed him to "significant and dangerous concentrations" of chemicals and otherwise failed to ensure a safe work environment. JA 34. As a result, he claimed, he suffers from toxic encephalopathy, a degenerative brain disease that produces memory loss, mental dysfunction and depression.

At trial, Harmon produced evidence that he and co-workers used generous amounts of Dowclene to clean rail parts and took few safety precautions. According to Harmon, the company never gave him a respirator, a mask or any other type of safety equipment, and "never informed him that the use of [Dowclene] could hurt him." Appellant's Br. at 5. Nor, he testified, did the railroad ever provide any written material to him about the safe and proper use of the solvent. His expert witnesses testified that the "solvent exposures over many years" caused his illness. JA 549.

CSX's witnesses countered that the company's employees, at least in Harmon's location and position, did not use Dowclene as prodigiously as Harmon described, and that the company did provide protective equipment to employees or at least made it available on demand. CSX's witnesses also testified that the company was never aware, and had no reason to be aware, that exposure to Dowclene could cause permanent damage to the nervous system. In support of this point, they noted that the Occupational Safety and Health Administration categorizes the chemicals as nervous-system depressants (which may cause temporary anesthetic-like effects) but not toxins (which may cause permanent ner-

vous-system damage). The Material Safety Data Sheets disseminated by Dow Chemical to CSX similarly did not identify permanent brain damage as a risk of using the chemicals. CSX also presented evidence to the effect that Dowclene did not cause Harmon's injuries.

After a three-week trial, the jury returned a verdict for CSX. On appeal Harmon challenges three evidentiary rulings by the district court: (1) the court's exclusion of evidence about safer, alternative chemicals that could have been used in place of Dowclene; (2) the court's exclusion of employee manuals used by CSX and its predecessor companies that detailed the proper use of Dowclene and other chemicals; and (3) the court's exclusion of several of CSX's interrogatory answers.

## II.

We review a district court's evidentiary decisions for an abuse of discretion. *Tompkin v. Philip Morris USA, Inc.,* 362 F.3d 882, 897 (6th Cir.2004). Even when a court abuses its discretion in refusing to admit evidence, moreover, we will not disturb the jury's verdict unless the ruling prejudiced the outcome of the case. *See* Fed.R.Evid. 103(a).

## A.

■ Harmon's initial argument—that the district court improperly excluded evidence of safer, alternative chemicals—fails on the preliminary ground that he did not proffer any such evidence. *See* Fed. R.Evid. 103(a)(2) (requiring offer of proof for consideration of excluded evidence on appeal). Neither the trial transcript nor Harmon's appellate briefs show any proffer of evidence that chemicals other than Dowclene could have been used more safely to clean the CSX trains. Harmon's only

"offer of proof" on the issue consists of his expert's skeletal statement that "[o]ne of the methods of control ... is the substitution of a less dangerous product for a more dangerous product." JA 544. But in making this statement, the expert did not identify any "less dangerous product[s]" or present any other evidence that alternative chemicals could have been used more safely by employees in Harmon's position. Nor did oral argument solve the problem, as Harmon's counsel could not point to any such evidence; instead, he claimed that the company's manuals and interrogatory answers sufficed to show a safer, alternative cleaning chemical. But the manuals and interrogatory answers, so far as we can tell (as the manuals are not part of the record), do not constitute evidence that alternative chemicals could have been used or should have been used. While the parties acknowledge that the manuals and interrogatory answers mention cleaning chemicals other than Dowclene, no one has identified any portion of these materials that vouches for the relative safety of alternative chemicals. On this scant record, we reject Harmon's claim that the district court failed to admit evidence of safer, alternative chemicals because he did not make a proffer of any such evidence.

## B.

■ Also unavailing is Harmon's challenge to the exclusion of the manuals. While Harmon did proffer testimony concerning the manuals' contents, the district court did not abuse its discretion in refusing to admit them, and Harmon at any rate has failed to show how the exclusion of the manuals prejudiced his case.

Harmon's expert industrial hygienist, Dr. Leonard Vance, testified about the contents of the manuals in an offer of proof to the court. He explained that the manuals were in effect in the 1970's and the 1980's and noted that the manuals referenced the Corbin, Kentucky CSX site where Harmon worked. "The manuals," he added, "were intended to lay out a prescription for what products [including solvents] could be purchased and used on the railroad.... [T]he manual[s] had prohibitions against ... employees ... using a solvent ... in a manner other than the way that the manual[s] said they were supposed to be used." JA 541. As to more specific safety restrictions in the manuals, Vance stated that "chlorinated solvents were designated only for certain restricted uses. And when they were to be used for those [ ] uses, [the manuals] talked about the personal protective equipment that needed to be used by the employee who was using that particular product." JA 543. The trial record also reveals a discussion among Harmon's lawyer, CSX's lawyer and the court concerning the manuals' contents—including the manuals' statement that Dowclene was to be used for cleaning electrical, not mechanical parts (as Harmon used it), and that proper safety precautions, including the use of a respirator, should be taken.

Harmon sought to use the manuals to show negligence by CSX. "We're trying," he argued, "to establish a violation of [CSX's] own rules and practices," JA 447–48, and "[t]he subject manuals were critical evidence of the failure of CSX to adhere to a reasonable standard of care in its shops[,] to promulgate, disseminate and enforce ... rules ... for the safety of [employees]," Appellant's Br. at 28. Noting that the manuals explain the proper use of the solvents, Harmon claimed that CSX did not make the manuals available to employees, did not convey the information in the manuals to employees and did not ensure that the employees used the solvents in accordance with the directions in the manuals—all of which, he urged, showed negligence by CSX. Harmon did not base any of his attempts to enter the

manuals into evidence on the theory that CSX knew that the solvents could cause brain damage or other harm if used improperly, nor did he try to use the manuals to establish the proper standard of care, JA 447–48 ("[CSX's lawyer] says we're trying to establish the standard of care with our manual. No. It's the contrary. We're trying to establish a violation of their own rules."). In excluding the manuals, the district court reasoned that Harmon had failed to lay a proper foundation for introducing them and that they referenced chemicals that the court had already excluded from admission. "[T]he manuals," the court concluded, "articulate the purposes and use of multiple chemicals at multiple sites for multiple purposes ... [and therefore] the manuals may serve to confuse the jury or to unduly prejudice the jury." JA 536.

The district court did not abuse its discretion in making this ruling. The manuals contain references to other chemicals that the district court had already excluded. They cover a wide variety of topics and are lengthy in nature, and their introduction would have created the risk of a confusing sideshow in what was already a lengthy and complicated trial. Nor did Harmon ever narrow his request to specific portions of the manuals, a failure that continues to this day: his appellate brief nowhere identifies the parts of the manuals that he would have used or explains how he would have used them.

Harmon also has failed to show how the exclusion of the manuals undermined his claim, if indeed the evidentiary ruling damaged his claim at all. His central theory of negligence was that CSX failed to provide adequate information and equipment concerning safety precautions to its employees. In attempting to prove that theory, Harmon did not need to introduce the manuals themselves into evidence. Whether the manuals were admitted or not, Harmon still could present—and indeed did present—evidence of CSX's failure to communicate safety information to its workers, including those who worked alongside Harmon. And in questioning employee witnesses, the court permitted Harmon to outline "hypothetical" details of the safety manuals, then ask the employees whether they had ever been given any such manuals or had ever seen them in the workshops. They all replied that they had not. To the same effect, foreman Charles Joseph testified that carmen working for CSX did not get copies of the manuals because safety training was "on-the-job." JA 211. In the end, whether the manuals should have been excluded or not, their absence did not unfairly prejudice Harmon's ability to prove his case.

Harmon also protests the district court's refusal to permit Dr. Vance to rely on the manuals in giving his testimony as an expert. We disagree. In making this ruling, the district court concluded that Harmon had failed to lay a foundation that the manuals were "of the [type] reasonably relied upon by experts in the field forming opinions on the subject." JA 537; *see* Fed.R.Evid. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions ..., the facts or data need not be admissible in evidence."). Neither in this court nor in the district court has Harmon offered any sustainable argument to the contrary. No abuse of discretion occurred.

C.

■ The district court, lastly, did not commit reversible error in refusing to admit the following interrogatory answers. Interrogatory Answer No. 3 lists other solvents that CSX provided for its employees to use, and Interrogatory Answer No. 4 identifies studies performed by CSX on a list of chemicals. Interrogatory Answers Nos. 7 and 8 describe the steps taken by CSX to limit workers' exposure to the

solvents and the proper safety procedures to follow, including wearing protective equipment such as a respirator. Interrogatory Answer No. 9 lists the manuals, Material Safety Data Sheets and other items that warned of the harmful effects of certain chemicals. Interrogatory Answers Nos. 11 and 12 identify information that CSX received concerning hazards associated with multiple chemicals, namely, Material Safety Data Sheets that witnesses discussed in detail at trial.

In excluding these answers, the district court noted that it had earlier "determined ... that inquiries regarding solvents or toxic chemicals which are not alleged to have caused the plaintiff's injuries are irrelevant and thus inadmissible" and had "previously refused to admit [the] ... manuals." JA 87. Add to that explanation the fact that the exclusion of the answers did not preclude Harmon from asking appropriate CSX employees the answers to many of these very questions, and it becomes clear that no reversible error occurred. Some of the interrogatory answers, moreover, contradicted rather than bolstered Harmon's theory of negligence. Far from admitting that CSX had failed to communicate proper safety procedures to its employees, the answers stated that CSX apprised its employees of the need to take "reasonable care" for their safety and that CSX provided the equipment for doing so by making available "rubber gloves, rubber aprons, face shields, goggles, dust masks, cannister respirators and air-supplied respirators for use with solvents." Interrog. Answer No. 7, JA 59.

### III.

For the foregoing reasons, we affirm the district court's judgment.